Hi, my name is Stephen Lasoff, the Plaintiff Appellant in the current matter before the panel. I want to thank the judges for the time and wisdom and the opportunity to have this case heard for oral argument. In my appeal, I hope to make the obvious case that summary judgment was improper. The District Court made multiple legal errors while drawing all reasonable inferences in the light of the moving party, Amazon. Here, summary judgment was improper because, first, there was limited fact-finding. And the fact-finding, there was 100 percent in Amazon's favor. You can see Amazon's Broner and Shield declarations that were submitted. There was a major dispute. What fact-finding made a difference? I mean, I understand you weren't the author of the brief, but the brief spends most of its time complaining that the District Court accepted Amazon's description as to how human beings weren't involved in this keyword purchasing process. And the District Court wound up saying, indeed, seemed to adopt York's position with regard to that's not a defense. So how did any of that so-called fact-finding matter? I'm not sure how it mattered. It shouldn't matter at all, even though they said it wasn't a defense. There is, like, document 15 in the case, Amazon admitted to be able to stop keywords that were submitted to the New Jersey District Court. Well, but it doesn't matter. I mean, you can complain about the District Court allegedly finding facts, but if that wasn't the basis for the Court's decision, and it appears to me that wasn't the basis for the Court's decision, it doesn't matter. If it's error, it's harmless. What mattered? Did the District Court find any facts that actually led to its conclusion? I think there are facts that would change their decision if they looked at it properly, and I will get to that. Well, time's ticking away, so. I'm sorry, Your Honor. All right. All right. Second, it was improper for the Court to rule that the CDA Communication Decency Act gives immunity to Amazon and preempts any state law claims. Amazon was a market, active in the market, was an active market participant, and is not covered under the CDA in any reasonable reading. They are much more than a passive service divider. Third, the issue of infringement was not promptly legalized, as in Tiffany and MTM cases, multi-time cases do not apply here. Factually, both these cases are much different than my case before the panel. The District Court graciously misread the aforementioned case law. Amazon legally and negligently allowed fraudulent companies to sell my brand with their online retail store, and I was never allowed the opportunity, factually or legally, to present the argument. Amazon provided no discovery, despite numerous requests. I mean, just as a background, I sold branded synthetic turf since 2003. I had a website, ingrass.com. I listed 20 to 30 ads on Amazon through the ASIN, which is Amazon Seller Identification Number. The turf I sold was specific, because I remember when I did it. It was the kind of material it was. It was fire-rated. It was made in the USA. And these were specific qualities of the product I was trying to launch. There are hundreds, if not thousands, of different kinds of synthetic turfs. Again, part of the problem here is when you deal with watches, it goes back hundreds of years. We all know what a brand-name watch is. But artificial turf is a little different. Nobody really has the concept that there could be hundreds of types of artificial turf. All different. So, now, sellers provide Amazon the contents for their listing. Amazon assembles advertisements for their listings across major surf engines. In Google's case, it's called AdWords. Amazon contracts with all these search engines. They buy keywords from them. And they're on the contract with the search engines to make sure there are no fraudulent ads. It's Amazon's job. Now, when you say fraudulent ads, what do you mean? Well, part of Amazon's case is that they keep selling. It's all these other third-party sellers that are causing the problem. But when Amazon buys an ad with Google, as in my initial document one, we got a letter from Google saying it's Amazon's responsibility to make sure they're giving truthful, not fraudulent ad words that doesn't bother anybody. And Amazon says it's all the third parties. But they're in contract with Google. They're in contract with Yahoo. And part of that contract says, you know, give us – it's up to you to monitor this. I guess I'm a little confused, Mr. Lassoff. The brief is replete with references to counterfeit products. And then we have this concept of competing products. Which is it? It's counterfeit. Meaning someone else has put their name on and are making artificial grass, calling it in-grass when it's not. When I set up the ads, there are specific characteristics of the grass, whether they're 46-ounce or whether they're made in the USA. There are specific characteristics. I did over 10 to 15 test purchases. Every piece of grass I got was different. So it was not – I only sold one specific type on Amazon. Everyone was the same. People just put on any kind they could find. But you say you made purchases. Purchases of what based on what? Oh, just buying my own ads from the people who were advertising it. Advertising turf or advertising – Under my specific ASINs. Well, but were they using the name in-grass? Yes. Where were they using the name in-grass? It's in the ASIN. It was in there. What's the – I mean, I know that's a code that Amazon uses to classify products, but that code isn't unique to in-grass turf. Other turf products can fit within that product code too. It would be unique to the kind of toothpaste. It would be unique to everything. It's specific for just that product only. It had its own barcode. It was just for that product. Everyone is listed under its own product, not to be confused with, like, eBay where every ad is different. You know, it's a mess. But with Amazon, it's only that product, the specific characteristics of that product. Well, they classify products, and your complaint is that other people's products wound up in your – what you've defined as your classification. Is that it? Specific product, yes. And how were those other products characterized on the site? As the same as mine, as the identical – What name did they use? They didn't – they're not allowed to claim to ASIN. So that's the thing. See, that's not a trademark violation. You're simply in the wrong field of law. You've brought a complaint about trademark violation. ASIN, Amazon's internal code, is not a trademark that you own. You may have a cause of action there, but I've got to say I haven't seen it in the lawsuit that's been filed or discussed here. This seems to me like an entirely new theory. Well, this has to do with, besides that AdWords also, that they're promoting my product, paying for ads, once I stopped selling on Amazon. My product never existed on there. Well, the chronology, as I've tried to figure it out, your declaration talked about pulling your product in March, officially terminated a relationship in May, and they stopped bidding on the keywords on June 3rd. They never stopped bidding on the keywords. In June 2018, they bid on the keywords. They still promote it on their website as of Sunday. So they never stopped bidding on it. So, again, I'm trying to pin down your complaint. Your declaration says your complaint is not the sale of competing products. Your complaint was that defendant misappropriated the Ingress trademark and domain name by getting these keywords. Yes, sir. So is it the problem that at points in time, including after you stopped selling on Amazon, if you'd put Ingress into the search engine, because Amazon purchased the ad, their ad would pop up on the Google or whatever search engine page. Is that the problem? Yes. What's unlawful about that? Well, from there you click on it, it's going to Amazon sells Ingress products, which at that point they never did. Well, what do you mean by Ingress products? You mean Amazon sells turf products. You're saying they didn't sell your turf products at that point in time. Yes. But what makes that unlawful? Well, they're competing against me in the whole web market. And why would you advertise any name on your website if you don't carry the product? Because you know somebody's interested in the product. I mean, multi-time machine, you're familiar with the case, because you made reference to watches. Right. It was okay for Amazon to attract customers looking for whatever the name of the watch was then, MTM, special ops watch, even though Amazon wasn't selling that. That's okay. It's okay for Ford to purchase the keyword Chevrolet in hopes that people interested in buying cars will come to Ford. What's the trademark violation? I agree with multi-time machines. The other watches were clearly labeled, whether it was a Longines, whether it was a Timex. Again, synthetic turf is just way different. Nobody has the realm that there's hundreds of different types. But the point of multi-time machine is that the core element of trade infringement is whether the defendant's conduct is likely to confuse customers about the source of the products. If the products that you wind up looking at on the Amazon website are identified as coming from different sellers, where's the trademark violation? They weren't clearly labeled that way. They were just savvy assumer may have known it, but the average consumer would be totally confused. Would you like to save the rest of your time so you can come back up on rebuttal? Oh, that is so generous of you. Thank you, Your Honor. Good morning, Your Honors. Vanessa Power on behalf of Amazon. As Your Honors have heard, this case turns on whether Amazon's use of a term is a keyword that was then used in search advertising by third-party search engines, which then led a user to a results page on the Amazon website, whether that use of a keyword by itself constitutes either trademark infringement or false advertising. And on the facts of this case, it does not. And we ask that this Court affirm the District Court finding on summary judgment for these reasons. The first is that Mr. Lassoff, when he began selling on the Amazon website as a seller, in 2008, he entered into a contract. It's called the Businesses Services Agreement. And under paragraph four of that contract, he gave Amazon a license to use his mark. And so that was authorization to allow Amazon to use the Ingress mark. There's an indication that after that license expired or authorization expired, that Amazon continued using the mark in advertising? I'll break that into two points, Your Honor. So there is an allegation that Amazon continued to use that keyword and purchase that keyword for purposes of third-party search engines. But the record is clear, and this is in the Browner Declaration, and it is at SCR 21-30. But Mr. Browner makes clear that in June of 2015, Amazon affirmatively put the Ingress term on its stop list. So it no longer was purchasing as of that date. But it could very well be that there were still search results that returned for the Ingress product. And I think what the confusion comes from here is the fact that once a, what is called a product detail page, once a product is created for sale on the Amazon site, Amazon retains that detail page. So even though Mr. Lassoff decided that he was no longer going to do business with Amazon, Amazon still, as a service provider and under that contract, retained the right to maintain that listing page. And other third-party sellers still have the right, if they're offering the identical product, as Your Honor noted, to list against that same product page. But they wouldn't have the right to list against, on the same page, and describe their product as Ingress. Your Honor, they might, if it is an identical product. And the reason, Your Honor, and I would cite, Your Honor, to the supplemental excerpts of record at 71, where Mr. Lassoff admitted in his deposition that, first, his, one, his mark is unregistered. Two, he has a non-exclusive relationship with his manufacturer of turf. And what he does is he cuts the turf into different shapes and sizes and then calls it Ingress and sells it. And he admitted that, yes, it could very well be the case that a different seller who uses that same large manufacturer in Georgia could cut the turf to the same size and shape and could sell the same product. All of that's still short of the question of whether that different seller could use the name Ingress. Perhaps not, Your Honor. That's not what's precisely— I mean, that's the potential trademark violation. That's correct. I understand the plaintiff has a theory, a broader theory, but there is a potential trademark violation if, and it's several steps down the road, there would be a violation if somebody else used the Ingress name. There may yet be a question of who's liable for that violation, but wouldn't there be a violation if somebody else used the Ingress name in its posting on the Amazon website? There is the potential for that, Your Honor. And in the instances, and this is also in the record, I would direct you to the supplemental excerpts of record at 123, 123, there is reference to Mr. Lassoff submitting some complaints to Amazon where he said there are third parties. He never said Amazon sold his product. There's no dispute as to that. But he said there are some other third parties who are selling against my listing, and they aren't valid listings. And so because Amazon doesn't know his product versus someone else's, requires a third party to go through a process to basically prove that up so that they know whether they need to take action or not. And that record evidence shows that he made allegations with respect to a series of different listings, and Amazon took action with respect to several of those. So that's an admission that's in the record. There is a process in the event that there was infringement by another third party against Mr. Lassoff's listings. There's a process in place that Amazon follows to address that. And so then to take a step back as to what is actually before the court, what Mr. Lassoff has alleged is this issue of keyword use and whether that keyword use gives rise to liability in this context. And it does not. As Your Honor noted in the multi-time machine case, there are some similarities with that case. Because in that case, the issue was whether the results that were returned on the Amazon website were, in fact, appropriate, and whether those constituted trademark infringement when, in that instance, Amazon did not actually sell the branded issue. And it's not precisely on point, but it's informative because in this case, just as with multi-time machine, there were competing products to Mr. Lassoff's Ingrass products that are listed in a search results page if someone is searching either for the Ingrass term directly or from a keyword search is linked to the search results page on Amazon. But the issue here is that to the extent that the results list shows an Ingrass listing that Mr. Lassoff himself initially created, he authorized Amazon to have that listing and maintain that listing, and that's as a matter of contract. And to the extent that there are any listings that are arguably in violation, then Mr. Lassoff has a process to follow to get behind that. And finally, if these are simply competing listings, meaning people who also sell artificial turf, those are specifically listed just as a multi-time machine with a photo of the product, with the name of the manufacturer, and the name of the seller. And so, again, as this Court found in multi-time machine, shoppers who are on the Internet are savvy consumers. They are reasonably prudent in the use of the Internet and recognize to look for a distinction between who is selling what when they're trying to determine what's at issue. I'm trying to remember listings. As I concede, I have been known to purchase things through the Amazon website. And let's see, picture, see the name of the seller. I really don't recall, unless it's part of the description, the manufacturer necessarily sticking out. I mean, for sure for books, if you go down to details, you'll find publisher. But for other products, and particularly here where Ingress really isn't a manufacturer so much as a customizer or taking the big rolls of artificial turf and putting them in more usable form, would it be so apparent to somebody looking at the Amazon website that this product, which I was led to because I used Ingress as a name for the search engine and it pops up with the Amazon ad, and I click on that and I get to the Amazon page for that classification of product, and I see a bunch of products, how clear is it that the product I'm purchasing wasn't what I started my search for? We think it would be clear, Your Honor. I would point Your Honor to a portion of the record. It's at Excerpts of Record 28. And this is a document that was provided by Mr. Lassoff in response to discovery. It's referenced in the declaration of Eric Bronner, who is an Amazon employee, who essentially explained what is displayed here. But what this shows is a results summary when there's a search performed for Ingress on the Amazon website. And what it shows is, with respect to these listings, and it may be challenging to see without blowing it up a little bit, but it does reference the title of the product. And at least on this preliminary page, it doesn't show all information. But it shows some initial information, including on- This is the kind of page I was thinking about. Exactly. And if you dig deeper, you might eventually get to the specific source of the product. But from a page like this, you don't. So this is the results page. It will show you who the seller is. And when it says buy, that's who made it. And so it may be offered by multiple sellers. But where it says who it's by, that is viewed as the manufacturer for purposes of the product. Was there a buy on page 38? 28, Your Honor. 28. Oh, I guess. I'm on 28. It's just that it wants to turn sideways whenever I- So what should I be looking at that will identify the source? Yeah, if you look at, for example, the second to the last results listing there. Okay. And it references a product. The title is 7 foot by 4 foot. Well, that one says buy all turf mats. Right. And then the one below it says buy in-grass. But two above it doesn't have a buy line. That's correct. And so it's not evident just from this initial search results page. If you click on product detail, would that give you the missing information? Yes, Your Honor. To the extent it's not listed immediately when you pull up the initial product listing page. Yeah, so this is what we would, I think, generally call just a results list. And then when you click on what you want to actually look at, the product itself, it will take you to what's called the product detail page. And just to clarify so that there's no confusion for the record, and this is in the record at the declaration of Mr. Schell. And that starts at supplemental excerpts of record 34. But it explains what an ASIN is. So an ASIN is an Amazon standard identification number. And the purpose of that is so that Amazon, on its own terms, can identify the products that are offered for sale on its site. So each unique product is assigned a particular ASIN. And I've never heard of ASIN before this case, so I assume that's where I read it. Where was that in the excerpts? Yeah, so it's at the excerpts of record at Mr. Schell's declaration. And it is at paragraph 8. So it's supplemental excerpts of record 35 in paragraph 8, where he references that each unique product offered for sale is assigned an Amazon standard identification number. And then he goes on to explain, and this is for products that are sold by anyone, by Amazon and by third parties. Of course, we're only talking about third-party sellers in this case. And the crux of the issue, although the focus is on keyword searches, we understand that the crux of the issue for Mr. Lassoff is whether the results that flow from that keyword search that may lead to a competing listing by a third party, either of a competing product or a third party that's listing against his same product, is infringement. And it is not here, either under a theory of trademark infringement or under a theory of false advertising. I think we've got the argument. Thank you, Your Honor. If there are no further questions. Thank you. The first thing my friend here said for the savvy Internet consumer, the laws only protect smart people now? Is it only for smart people we're protecting? Everybody gets confused. Shouldn't we be protecting the lowest person who doesn't understand something? Everybody uses the Internet. It's no longer an oddity as it was in 1996. And as far as multi-time machine, the big difference between that case and mine, they didn't have a contract with Amazon. They didn't sell anything on Amazon. I had a contract with Amazon. I agreed to let them use my name. But also in that contract that she referenced, too, Section 4, it also allowed me to remove the use of my name. And that's what happened in June of 2015. Even though she's referring to Mr. Browner's declaration, he goes through everything. Then he says, if there's a mistake, oh, it's the search engine's fault, not Amazon's fault. So everything they said, they admit they cannot control it. Why would they use a comment like that, that it's Google's fault? I'm still trying to hone in on exactly the complaint. The complaint, as I understand it, is that by purchasing search engine ads using the name Ingress, Amazon attracted customers to its website where those customers were offered products at the early period of time that included Ingress products and also competing products. And at a later point in time, Ingress was no longer selling on the website, but other people were selling on the website. Is that the complaint? Yes, Your Honor. I've sold thousands of products. You know, you're in business for a couple of years. You want to get repeat customers. I lost 100 percent of them by them doing that. Besides Turf, there was also a thing called Ingress Puppy Potty, which is potty dog products. I've sold thousands of them on Amazon, and people specifically looked for Ingress when they purchased it. That's why they used the search word. They're paying for it. It's not like they're doing it out of charity or anything. And then we come back to multi-time machine and what trademark protects. I mean, if I mentioned this in passing before, but if Ford wants to buy the word Chevrolet in order to attract to its website people who are interested in buying cars, that's not a violation of the trademark law as long as Ford doesn't use the word Chevrolet when it's trying to sell a Fusion. But in key words, I do not have the decisions in front of me, but you really don't do that anymore where Ford is going to advertise for Chevrolet. It really is an infringement. Well, you're just telling me it really is an infringement, but I'm telling you as my understanding of the law, it's not. You are allowed to use. I mean, Pepsi can use Coke in its ads, and you'll pretty regularly see people advertising using competitors' names. In this case, if you have somebody interested in buying any kind of product, there's nothing wrong with attracting people interested in that kind of product and trying to sell them a different, that product from a different source as long as you're not telling them it's from the first source. And so that's why I'm working hard to try to figure out exactly what your claim is. Your claim, as I understand it, is not what I understand to be a valid claim, but I want to make sure I'm not losing something that you're trying to put to us. I'm trying to put it together the best I can, and obviously the time has expired here. That's fine. Why don't you go ahead and finish your answer to Judge Clifton's question? I'm making you work overtime, but we appreciate your coming out to us. My biggest fear was you not asking me any questions. Now I'm wrong. Sorry. No, we're trying to understand exactly what the complaint is. And Amazon's immense marketing power couldn't take away any business. The law needs to be vetted a little more than these quick decisions in district courts. I mean, that's my whole case here. Why can't a jury see what they think about this law? I mean, we had no discovery from Amazon. We provided all the discovery they wanted. Everything was either we don't know or trade secret or it's none of your business. Why can't a jury be able to hear what Amazon does? This is emerging law. It's 100 people I speak to side with me. But that's – a jury will never get that opportunity. And I just felt the fact that they did not give discovery is why my case should be sent back and the summary judgment reversed. And that's all I have. And I thank you, all your honors, for your time, and I hope you have a nice day. Thank you for coming in and presenting your argument. Thank Amazon's counsel as well. The matter is submitted for decision by the court. We've got one more case on the argument calendar, and that's State Farm v. Fraunfelter.
judges: Clifton, Nguyen, Battaglia